PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICHOLE GRAHAM, ) | |
| ) | CASE NO.  4:20-CV-20 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| PHILLIPS FEED SERVICE, INC., ) | |
| ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | [Resolving ECF No. 28] |

Pending is Defendant's Motion for Summary Judgment.  ECF No. 28.  The Motion has been fully briefed.  *See* ECF Nos. 29, 30.

For the reasons given below, Defendant's Motion is granted in part and denied in part. Summary judgment is granted in favor of Defendant as to Plaintiff's sex discrimination claim. Summary judgment is denied as to Plaintiff's sexual harassment and retaliation claims.

**I. Factual and Procedural Background**

Defendant is a national distributor of pet food and pet supplies.  ECF No. 27 at PageID #: 795.  Plaintiff was hired by Defendant as a Territory Sales Manager ("TSM") in January 2017. *Id.* at PageID #: 796.  Each TSM is assigned a specific region of the country and is responsible for servicing stores and businesses in that region.  *Id.* at PageID #: 795.  Each TSM reports to a Regional Sales Manager ("RSM").  *Id*.  At the time Plaintiff was hired, her assigned RSM was Jeff Durgan ("Durgan").  *Id.* at PageID #: 796.

On her first day of employment, Plaintiff received a copy of Defendant's Harassment and Discrimination Avoidance Policy.  *Id*.  In pertinent part, the policy defines sexual and other

4:20-CV-20

forms of harassing or discriminatory conduct, provides for a reporting mechanism, and explicitly prohibits retaliation against an employee who reports such conduct. ECF No. 27-1 at PageID #: 799–800. Plaintiff signed an acknowledgment form indicating that she received the policy and was aware of its contents, including the procedure for reporting sexual harassment and the prohibition against retaliation. ECF No. 27 at PageID #: 796.

### A. January 2017: Alleged Sexual Assault

Plaintiff alleges that on or about January 24, 2017, Durgan traveled from Michigan to Youngstown, Ohio, staying at a hotel in Canfield, Ohio. ECF No. 1 at PageID #: 3. According to Plaintiff, Durgan invited her to his hotel room to prepare for a "ride-along" that was to take place the next day. Id. Plaintiff alleges that she agreed to meet Durgan in his hotel room and that, despite her repeatedly saying "no" and asking him to stop, Durgan sexually assaulted her during this meeting. Id.

Plaintiff asserts that, on the same day as the alleged sexual assault, she reported the incident to another TSM, Stacy Casey ("Casey"). Id. According to Plaintiff, Casey told her to "keep her head down," which Plaintiff understood to mean "don't say anything." Id. Plaintiff testified at her deposition that she did not share with Casey the details of what had occurred because she "had just been completely violated and didn't want to relive it again at that point." ECF No. 24-1 at PageID #: 144. Plaintiff testified, however, that she told Casey, "[t]hat he touch[sic] me and was trying to kiss me." Id. Casey did not communicate Plaintiff's report to Defendant's Human Resource Department. ECF No. 26-1 at PageID #: 572.

On the day following the alleged assault, Plaintiff claims that Durgan apologized to her and indicated that he had overstepped his boundaries. ECF No. 1 at PageID #: 3. Nonetheless, Plaintiff alleges, later that evening, Durgan again invited her to his hotel room, and this time she

4:20-CV-20

refused. *Id*. Plaintiff claims that Durgan became rude and hostile towards her as time went on. *Id.* at PageID #: 4. Additionally, Plaintiff alleges that Durgan's inappropriate conduct and advances continued. *Id*.

### B. April 2017–October 2017: Plaintiff's Reassignment and Defendant's Investigation

Plaintiff alleges that on April 3, 2017, she told another management-level employee, Kyle Wessel ("Wessel"), that Durgan was treating her unfairly and that it was her belief that this was because of the initial sexual assault. *Id*. Plaintiff claims that Wessel immediately reported Plaintiff's concerns about Durgan to the supervisor for Territory Managers, Lon Ziegler ("Ziegler"), but although Ziegler said he would handle the situation, he failed to contact Defendant's Human Resource Department or otherwise follow company procedure. *Id*. Plaintiff was, however, reassigned to another RSM, Joe Semonich ("Semonich"), on April 4, 2017. *Id*.

Plaintiff alleges that she was required to continue working and communicating with Durgan despite the reassignment, and that Durgan's inappropriate sexual comments and advances toward her continued. *Id.* at PageID #: 4–5. Moreover, Plaintiff alleges that after her transfer to Semonich's supervision, Durgan contacted her and told her that her actions "almost cost him his job." *Id*. Plaintiff testified that, given what Durgan said, it was her impression that Ziegler had contacted him, but that she was unsure of the details of that conversation. ECF No. 24-1 at PageID #: 145. Plaintiff also testified that she again spoke to Casey regarding Durgan's conduct, and that Casey gave her the "exact same advice" she had given her before, which was to "keep [her] head down." *Id.* at PageID #: 146.

Six months later, in October 2017, Plaintiff heard that Defendant was considering reorganizing its sales force. ECF No. 27 at PageID #: 796. Plaintiff contacted Semonich, her supervisor at the time, and told him that if the reorganization rumor was true, she could not be

3

4:20-CV-20

reassigned to Durgan's team. Id. Plaintiff was not reassigned to Durgan's team, but was transferred to a new RSM, Michael Beaulieu ("Beaulieu"). Id. Plaintiff alleges that she was told that "no one wants to supervise [you]" because of the sexual assault allegations concerning Durgan and that she was "bad news." ECF No. 1 at PageID #: 5. In Plaintiff's answers to interrogatories, she indicates that Beaulieu relayed this information to her in a face-to-face conversation. ECF No. 24-1 at PageID #: 242.

Also in October 2017, Defendant's Vice President of Human Resources, Renee Daniels ("Daniels"), launched an investigation into the matter in response to Plaintiff's concerns about being on Durgan's team. ECF No. 27 at PageID #: 796. As part of her investigation, Daniels interviewed Plaintiff twice, first via telephone and then in-person. Id.

Daniels also interviewed Casey and Defendant's Director of Customer Care, Michelle Lynch ("Lynch"). Id. at PageID #: 797. In her interview with Daniels, Casey confirmed that she did in fact receive a call from Plaintiff in January 2017, immediately after Plaintiff's hotel room meeting with Durgan. Id. According to Casey, during this call, Plaintiff was crying and reported that Durgan had engaged in inappropriate conduct. Id. Lynch relayed some concerns regarding Durgan as a co-worker and RSM. Id.

Daniels testified at her deposition that, following her interviews with Plaintiff, Casey, and Lynch, she conducted an in-person interview with Durgan. ECF No. 26-1 at PageID #: 580. On October 27, 2017, Durgan was terminated by Defendant for what Daniels testified was "a violation of our values and our harassment policy, as well as just complete unprofessional behavior in a position of authority." Id. at PageID #: 581. Plaintiff claims that, prior to Durgan's termination, no disciplinary action was taken again Durgan. ECF No. 1 at PageID #: 4. Additionally, Plaintiff alleges that from April 4, 2017 (the date she was transferred from

4

4:20-CV-20

Durgan's team) to October 27, 2017 (the date of Durgan's termination) she was forced to continue interacting and communicating with Durgan. *Id*.

### C. April 2018–September 2018: Defendant's Reduction in Force and Plaintiff's Termination

In April of 2018, Defendant hired William Hooker ("Hooker") as its Senior Vice President of Sales. ECF No. 27 at PageID #: 797. Shortly thereafter, Defendant's Executive Team, which included Hooker, saw a need to implement a reduction in force ("RIF"). *Id*. Twenty-seven employees of Defendant, including Plaintiff, were selected for inclusion in the RIF. *Id*. Plaintiff was informed of her termination on September 13, 2018, in a meeting with Jeffrey Morehouse ("Morehouse"). *Id*. On being told that her position was being eliminated, Plaintiff told Morehouse that she "might throw up" and that she "needed to have a cigarette." *Id*. Additionally, Plaintiff said to Morehouse, "[y]ou know I was raped by management." *Id*. Plaintiff testified that this was the first time she used the word "rape" when referring to the January 2017 incident. ECF No. 24-1 at PageID #: 158. Ultimately, Plaintiff alleges that her employment with Defendant was terminated without just cause and in retaliation for reporting the alleged January 2017 sexual assault. ECF No. 1 at PageID #: 5.

Plaintiff filed charges of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). *Id.* at PageID #: 1–2. The EEOC issued a Notice of Right to Sue on October 7, 2019. *Id.* at PageID #: 12.

## II. Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required

5

4:20-CV-20

to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott*, 550 U.S. at 380. In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id.*

6

4:20-CV-20

("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

### III. Law and Analysis

#### A. Preliminary Note

Chapter 4112 of the Ohio Revised Code tracks Title VII of the federal Civil Rights Act of 1964 both with respect to substantive law and evidentiary standards. See *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm'n*, 575 N.E.2d 1164, 1167 (Ohio 1991); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Whenever both state and federal discrimination, harassment, or retaliation claims are alleged, the Court treats them as a singular allegation and applies federal law. See *Garcar v. City of Youngstown, Ohio*, 2019 WL 969401, at *9 (N.D. Ohio Feb. 28, 2019) (Pearson, J.) ("Federal case law interpreting Title VII of the Civil Rights Act is generally applicable to discrimination claims arising under Ohio Rev. Code chapter 4112.").

#### B. Plaintiff's Sex Discrimination Claim

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, religion, sex, and national origin in the terms and conditions of employment. 42 U.S.C. § 2000e–2(a)(1). To succeed on a Title VII sex discrimination claim, a plaintiff must either produce direct or circumstantial evidence of discrimination. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019). Plaintiff does not assert that she has direct evidence of discrimination, so she must prove a *prima facie* case by establishing, by a preponderance of the evidence, that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) that others, similar to her did not suffer the same adverse action. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

7

4:20-CV-20

With respect to the third element, an "adverse employment action" is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). For an employment action to be considered "adverse" and therefore actionable, it must amount to a "materially adverse change" in the terms or conditions of a plaintiff's employment. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).

To satisfy the fourth element, a plaintiff must prove, by a preponderance of the evidence, that the employee with whom the plaintiff seeks to compare herself is similar to the plaintiff in all "relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). To this end, the Sixth Circuit has held that "[i]n order for two or more employees to be considered similarly situated . . . the plaintiff must prove that all of the relevant aspects of [their] employment situation are 'nearly identical' to those of the [non-protected] employee[] who [the plaintiff] alleges [was] treated more favorably." *Pierce*, 40 F.3d at 802. Aspects of employment that are considered relevant include whether the plaintiff and non-protected employee "dealt with the same supervisor, have been subjected to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Under the *McDonnell Douglas* framework, once a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant successfully articulates a

8

4:20-CV-20

legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to prove that the defendant's stated reason is pretextual, and that unlawful sex discrimination was the real reason for the adverse action. See Id. at 802.

Here, Plaintiff alleges she was discriminated against in the compensation and other terms and conditions of her employment, in Defendant's failure to take any employment action against Durgan, in Defendant's failure to provide her with proper training, and in Defendant's termination of her employment while other male TSMs remained employed. ECF No. 1 at PageID #: 5–6.

Plaintiff has established the first three elements of her *prima facie* case, and, for purposes of its Summary Judgment Motion, Defendant does not dispute Plaintiff's ability to do so. See ECF No. 28 at PageID #: 822. But Plaintiff has failed to establish the fourth prong, resulting in the failure of her *prima facie* case. Specifically, Plaintiff does not identify any similarly situated employee outside of her protected class. Plaintiff attempts to establish the fourth element of her *prima facie* case by relying on the affidavit of one of her former supervisors, Michael Beaulieu. ECF No. 29 at PageID #: 863–64. In his affidavit, Beaulieu states that, due to logistical obstacles, Plaintiff's job was "much more difficult than other territory sales managers," that he "does not believe [she] was given the opportunity to succeed," and that several factors made it "difficult for her to succeed in her position." Id. Even when drawing all reasonable inferences in Plaintiff's favor, however, Beaulieu's statements do not provide evidence of a comparator, *i.e.*, a non-protected employee who is similar to Plaintiff in all relevant respects but was treated more favorably than Plaintiff was. See McDonnell Douglas Corp., 411 U.S. at 802.

Plaintiff also attempts to establish the fourth element of her prima facie case by pointing to the only other female TSM included in the RIF, Yvonne Burns. ECF No. 29 at PageID #: 858.

9

4:20-CV-20

Plaintiff alleges that Burns was treated more favorably than her because Burns was offered an inside sales representative position as part of the RIF, while Plaintiff was not. *Id.* Plaintiff's attempt to rely on Burns is misplaced.

The problem with this argument is that Plaintiff alleges sex discrimination, meaning that her protected class status is based on her identity as a woman. Burns, also a woman, is a member of the same protected class. Thus, Burns does not qualify as an employee outside of Plaintiff's protected class for purposes of the *McDonnell Douglas* analysis. Even assuming, arguendo, that Burns does qualify as an employee outside of Plaintiff's protected class, Burns is not similar to Plaintiff in all "relevant respects." See *Ercegovich*, 154 F.3d at 352. Notably, Burns was based in an entirely different region than Plaintiff and reported to a different supervisor or RSM. ECF No. 30 at PageID #: 876. Thus, Burns is not similarly situated to Plaintiff for purposes of the fourth element of her *prima facie* case.

Because Plaintiff has failed to provide evidence of a comparator, she is not able to establish the fourth element of her *prima facie* case. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's claim of sex discrimination.

**C. Plaintiff's Sexual Harassment Claim**

A plaintiff may also establish a Title VII violation by proving that sexual harassment created a hostile or abusive work environment. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish a *prima facie* case of hostile work environment sexual harassment, a plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment unreasonably interfered with her work

4:20-CV-20

performance by creating a hostile or abusive work environment; and (5) there is a basis for employer liability. See *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008).

For the second element, "unwelcome sexual harassment" under the Title VII of the Civil Rights Act of 1964 includes "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" that create "an intimidating, hostile, or offensive working environment." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 409 (1992) (White, J., concurring) (quoting 29 CFR § 1604.11(a) (1991)).

For the fourth element, to determine whether a plaintiff's work environment is hostile or abusive, courts look to "'all of the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.'" *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The Court must evaluate the totality of the circumstances in assessing the conduct in question, and must do so by both an objective and a subjective standard. See *Harris*, 510 U.S. at 21–22. Specifically, the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim themself must subjectively find the environment hostile or abusive. *Id.* Notably, the Sixth Circuit has recognized that extremely serious isolated incidents can, alone, provide the basis for a hostile or abusive working environment. See *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000).

Here, Plaintiff can establish the first element of her *prima facie* case because, as a woman, she is a member of a protected class.

11

4:20-CV-20

On the second element, Defendant asserts that Plaintiff's hostile environment sexual harassment claim is premised on Defendant's allegedly inadequate response to the January 2017 sexual assault that Plaintiff argues occurred. ECF No. 28 at PageID#: 816. Defendant argues that Plaintiff cannot establish the second element of her *prima facie* case—that she was subjected to unwelcome sexual harassment—absent proof that the sexual assault actually occurred. *Id*. However, viewing the allegations in the light most favorable to Plaintiff, a genuine dispute as to material fact exists regarding the alleged January 2017 sexual assault. A reasonable jury could find that Plaintiff suffered sexual assault at the hands of her supervisor, Durgan.

Furthermore, Plaintiff also alleges that Durgan engaged in other conduct over the course of her employment, which, when viewed in the light most favorable to Plaintiff, creates an additional genuine dispute of material fact as to the second element of Plaintiff's *prima facie* case. ECF No. 29 at PageID#: 844–45.

On the third element, accepting Plaintiff's allegations, the harassment she endured was based on sex.

Turning to the fourth element, Defendant asserts that the conduct Plaintiff reported to Wessels and Ziegler was not sufficiently "severe or pervasive" enough to create a hostile or abusive work environment. ECF No. 30 at PageID #: 870. Plaintiff's evidence, however, creates a genuine issue of material fact as to whether she was subjected to "severe or pervasive" conduct that would constitute a hostile or abusive work environment. This factual determination is best left to a jury and ought not be decided as a matter of law at the summary judgment stage.

On the fifth element, even when a plaintiff does not suffer any tangible negative employment action, an employer is vicariously liable for the conduct of a supervisor that results in a hostile or abusive environment unless it can establish the affirmative defense set forth by the

4:20-CV-20

Supreme Court in *Ellerth*, 524 U.S. at 765 and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). To establish the *Faragher*-*Ellerth* defense, the employer must show by a preponderance of the evidence that "(1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

An employer satisfies the first element of the *Faragher*-*Ellerth* defense "when it has promulgated and enforced a . . . harassment policy." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 275 (6th Cir. 2009). An effective harassment policy "should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy." *Clark v. UPS, Inc.*, 400 F.3d 341, 349-50.

Here, on the fifth and final element of Plaintiff's *prima facie* case, Defendant claims that it is entitled to the *Faragher*-*Ellerth* affirmative defense. Several issues of material fact on this element, however, preclude deciding this issue at the summary judgment stage. First, at times relevant to the filing of this case, other than in California, Defendant does not provide training on its harassment policy. ECF No. 26-1 at PageID #: 514. Renee Daniels, Defendant's Vice President of Human Resources, testified that she is unaware of any other state that requires training on Defendant's harassment policy. *Id*. This lack of training arguably renders Defendant's harassment policy "ineffective." *See Clark*, 400 F.3d at 349–50 ("An effective harassment policy should at least . . . provide for training regarding the policy.").

13

4:20-CV-20

Second, a genuine dispute as to material fact exists as to whether Defendant "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." See *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. Plaintiff alleges that she reported Durgan's inappropriate conduct to Casey on the same day of the alleged assault and then, months later, also reported Durgan's inappropriate conduct to Kyle Wessel, who communicated Plaintiff's concerns to Lon Ziegler. ECF No. 1 at PageID #: 3–4. Plaintiff avers that not one of these individuals informed HR, as required by Defendant's sexual harassment policy. ECF No. 29 at PageID #: 855–56. It was not until October 2017, eight months after the alleged hotel room sexual assault, that Defendant's Vice President of Human Resources launched an investigation into Plaintiff's concerns about Durgan. ECF No. 27 at PageID #: 796.

Defendant counters by alleging that when it first learned of Durgan's inappropriate conduct through Joe Semonich, it launched an investigation and subsequently terminated Durgan's employment. ECF No. 28 at PageID #: 819. Accordingly, a genuine dispute of material fact exists regarding whether Defendant "exercised reasonable care to prevent and *correct promptly* any sexually harassing behavior." See *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807 (emphasis added). Summary judgment on this claim is, therefore, inappropriate.

Additionally, Defendant claims that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." ECF No. 28 at PageID #: 816–17. See *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. Defendant's argument relies on two points: first, that Plaintiff did not report that she had been "sexually assaulted" until she was terminated in September 2018, and second, that any conduct she reported to Casey cannot be considered "tak[ing] advantage of any preventive or corrective opportunities" because Casey is not a "management-level employee." ECF No. 28 at

14

4:20-CV-20

PageID #: 816–20; ECF No. 30 at PageID #: 867–68. Defendant's first point conflicts with its sexual harassment policy, which provides in pertinent part:

> Sexual harassment is defined as unwanted sexual advances (either verbal or physical, requests for sexual favors, and either verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment; (2) submission or rejection of the conduct is used as a basis for making employment decisions; or (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, or offensive work environment.

ECF No. 27-1 at PageID #: 800–01. Accordingly, there is no provision in the policy that limits reportable sexual harassment to sexual assault. Consequently, a genuine dispute as to material fact exists regarding the conduct Plaintiff reported and how it was addressed by Defendant.

A genuine dispute of material fact also exists regarding Defendant's second point, that Casey was not a "management-level employee" and was thus not required to relay Plaintiff's concerns to Defendant's Human Resources Department. ECF No. 30 at PageID #: 867–68. Defendant's sexual harassment policy provides:

> If you experience or witness sexual or other unlawful harassment and/or discriminatory conduct at work, report it immediately to your supervisor. If your supervisor is unavailable or you believe it would be inappropriate to discuss it with your supervisor, you should immediately contact the Human Resources Department or *any other member of management*. There will not be punishment or reprisal if you report conduct that may violate this Policy or ask questions or raise concerns about it.
>
> Any supervisor *or manager* who becomes aware of possible sexual or other unlawful sexual harassment or discrimination is required to immediately advise the Human Resources Department so that it can be investigated in a timely and confidential manner.

ECF No. 27-1 at PageID #: 800–01 (emphasis added). Plaintiff alleges and Defendant disputes that Casey, a TSM, is a member of Defendant's management. ECF No. 29 at PageID #: 855;

15

4:20-CV-20

ECF No. 30 at PageID #: 867–68.[1]  Accordingly, a genuine dispute of material fact exists on this issue and summary judgment is improper.

Because of the above disputes of material fact, summary judgment is denied on Plaintiff's hostile environment sexual harassment claim.

### D. Plaintiff's Retaliation Claim

Like a Title VII discrimination claim, a plaintiff can establish a Title VII retaliation claim by offering either "direct evidence of retaliation or circumstantial evidence that would support an inference of retaliation." Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014) (quoting Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 538 (6th Cir. 2008)). If a plaintiff relies on circumstantial evidence, their claim is analyzed under the McDonnell Douglas burden-shifting framework.

Under the McDonnell Douglas framework, a plaintiff bears the initial burden of establishing a prima facie case of retaliation. Laster, 746 F.3d at 730. If the plaintiff successfully establishes their prima facie case, the burden then shifts to the employer "to articulate some legitimate, non-discriminatory reason for its actions." Id. (quoting Dixon v. Gonzalez, 481 F.3d 324, 333 (6th Cir. 2007)). If the employer is able to so articulate, the burden shifts back to the plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision." Laster, 746 F.3d at 730 (quoting Dixon, 481 F.3d at 333). Although

---

[1] Defendant's reliance on Vance v. Ball State Univ., 570 U.S. 421 (2013) to support its assertion that Casey is not a management-level employee is misplaced. ECF No. 30 at PageID #: 867. Vance concerned defining a management-level employee for purposes of assessing whether an alleged harasser is to be identified as a co-worker or as a manager. See Vance, 570 U.S. at 431. That is inapplicable here, as the focus is not on Casey as an alleged harasser, rather it is whether Casey is a manager for purposes of Defendant's sexual harassment reporting mechanism.

4:20-CV-20

the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout. *Dixon*, 481 F.3d at 333.

To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (internal quotation marks omitted). Regarding the fourth element, the Supreme Court has held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

The parties do not appear to dispute that Plaintiff has established the first and third elements of her *prima facie* case. On the first element, Plaintiff did engage in a protected activity, namely, reporting the alleged January 2017 sexual assault and other inappropriate conduct that she alleged Durgan engaged in. ECF No. 1 at PageID #: 3–5. On the third element, Defendant took an action that was materially adverse to Plaintiff, namely terminating her employment in September 2018. ECF No. 27 at PageID #: 797.

The parties dispute, however, whether Defendant was aware that Plaintiff had engaged in protected activity and, consequently, whether there exists a causal connection between the protected activity and the materially adverse action. Defendant avers that its Senior Vice President of Sales, William Hooker, the individual responsible for instituting the RIF, was unaware of any protected activity Plaintiff had engaged in when she was selected for

17

4:20-CV-20

termination.  ECF No. 28 at PageID #: 824–25.  This assertion, however, is at odds with Hooker's own deposition testimony, in which he stated that he knew Durgan's employment was terminated because of a complaint of sexual harassment raised by Plaintiff.  ECF No. 25-1 at PageID #: 297.  Additionally, whether Hooker alone knew is not dispositive, given that the decision to terminate Plaintiff was made by Hooker, Daniels and Jeff Morehouse.  ECF No. 26-1 at PageID #: 746.  Accordingly, a genuine dispute of material fact exists regarding whether Defendant was aware of the protected activity Plaintiff had engaged in.

For the fourth element of the prima facie case, a plaintiff must "proffer evidence sufficient to raise the inference that [their] protected activity was the likely reason for the adverse action."  *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990).  Furthermore, the Sixth Circuit has held that a plaintiff's burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is "a causal connection between the retaliatory action and the protected activity[.]"  *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

Here, Plaintiff has met the minimal burden to overcome summary judgment on the fourth element of her *prima facie* case.  Plaintiff alleges that during her entire tenure with Defendant, she "never received any written or verbal write-ups and had no negative reviews in her job performance."  ECF No. 1 at PageID #: 5.  Additionally, Plaintiff points out that she received a pay raise in April 2018.  *Id*.  Accordingly, considering the evidence in the light most favorable to Plaintiff, she has alleged sufficient facts to preclude summary judgment on the question of whether her protected activity was the but-for cause of her termination.

Summary judgment is, therefore, inappropriate on Plaintiff's claim that her termination was retaliatory.

4:20-CV-20

## IV.  Conclusion

Defendant's Motion is granted in part and denied in part.  Summary judgment is granted on Plaintiff's sex discrimination claim.  Summary judgment is denied on Plaintiff's sexual harassment and retaliation claims.

A separate Trial Order will issue.


IT IS SO ORDERED


| December 27, 2021 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |